# United States Court of Appeals for the Federal Circuit

---

**FORRESTER ENVIRONMENTAL SERVICES, INC.,**
AND **KEITH E. FORRESTER,**
*Plaintiffs-Appellants,*

v.

**WHEELABRATOR TECHNOLOGIES, INC.,**
*Defendant-Appellee.*

---

2012-1686

---

Appeal from the United States District Court for the District of New Hampshire in No. 10-CV-0154, Judge Joseph N. Laplante.

---

Decided: May 16, 2013

---

SIBLEY P. REPPERT, Pearl Cohen Zedek Latzer LLP, of Boston, Massachusetts, argued for plaintiffs-appellants.

STEVEN E. GRILL, Devine, Millimet & Branch, P.A., of Manchester, New Hampshire, argued for defendant-appellee.

---

Before NEWMAN, BRYSON, and DYK, *Circuit Judges.*

DYK, *Circuit Judge.*

Plaintiffs Forrester Environmental Services, Inc. and Keith E. Forrester (collectively "Forrester") appeal from a final judgment of the United States District Court for the District of New Hampshire. The district court granted summary judgment for defendant Wheelabrator Technologies, Inc. ("Wheelabrator") regarding Forrester's business tort claims based on New Hampshire law. Forrester contends that the district court lacked subject-matter jurisdiction over its state law claims and, in the alternative, that the district court erred on the merits.

We conclude that the district court lacked subject-matter jurisdiction over Forrester's claims. We therefore vacate the district court judgment and remand to the district court with instructions to remand the case to New Hampshire state court.

BACKGROUND

Forrester and Wheelabrator are competitors in the market for phosphate-based treatment systems for stabilizing heavy metals in municipal and industrial waste such as incinerator ash. These treatments prevent the heavy metals from potentially leaching into sources of drinking water. Wheelabrator calls its treatment system "WES-PHix" and has obtained several related U.S. patents, including U.S. Patent Nos. 4,737,356 ("the '356 patent"), 5,430,233 ("the '233 patent"), and 5,245,114 ("the '114 patent"). Forrester calls its system "FESI-BOND" and it too has obtained U.S. patents on its waste treatment system.

In 2001, Wheelabrator entered into a license agreement with a Taiwanese company called Bio Max Environmental Engineering ("Bio Max"). The license stated that Wheelabrator "owns certain technical information and patents relating to the service of WES-PHix®" and

that Wheelabrator "is willing to grant[] the right and license to commercially provide the service of WES-PHix® under said patents . . . in Taiwan." J.A. 328. The terms of the license granted Bio Max "the exclusive license and right to utilize and sublicense WES-PHix® . . . anywhere in Taiwan." J.A. 331. Bio Max then sublicensed WES-PHix to Kobin Environmental Enterprise Co., Ltd. ("Kobin").[1] Kobin used WES-PHix to treat incinerator ash at its plant in Taipei, Taiwan. The sublicense required Kobin to pay royalties either to Bio Max or Wheelabrator, depending on the status of the Bio Max/Wheelabrator license.

In 2004, Forrester learned that Kobin was dissatisfied with WES-PHix due to the odor it generated. Forrester developed a variation on its FESI-BOND system using dicalcium phosphate dihydrate powder ("DCPDHP") to address the odor problem and persuaded Kobin to license FESI-BOND for use at Kobin's Taipei plant. In April 2005, Kobin began regularly purchasing DCPDHP from Forrester.

On March 17, 2006, Wheelabrator sent Kobin a letter asserting that Kobin was in breach of its WES-PHix sublicense agreement for failure to pay royalties. The letter stated that "Wheelabrator understands that Kobin is using a phosphate-based process to treat municipal waste combustion ash . . . at Kobin's [a]sh processing facility in  Taiwan" and that "[t]he Sublicense Agreement obligates Kobin to pay Bio Max or Wheelabrator . . . for each tonne of [a]sh stabilized by phosphate at its [a]sh processing facility." J.A. 1451. The letter also threatened legal action in Taiwan to enforce the sublicense agreement.

---

[1]    Kobin was previously known as Kuo-Bin Ceramic, Inc. As the name change is immaterial, for the sake of simplicity we refer to both entities simply as "Kobin."

In November 2006, Kobin stopped purchasing DCPDHP from Forrester and entered into a new WES-PHix sublicense with Wheelabrator. The license defined WES-PHix as "the patented . . . and proprietary process of immobilization of metals, such as lead and cadmium, in solid residues . . . using any solid, liquid or chemical form of phosphate and/or lime." J.A. 1281–82. The agreement specifically referenced the '356, '233, and '114 patents, and granted "the right and license to utilize . . . WES-PHix® under said patents . . . in Taiwan." J.A. 1279. The agreement did not explain how U.S. patents could be licensed for activities in Taiwan.

On February 23, 2010, Forrester filed suit against Wheelabrator in the Superior Court of the State of New Hampshire, Belknap County. Forrester's second amended complaint alleged four causes of action, all based on New Hampshire state law: (1) a violation of the New Hampshire Consumer Protection Act, *see* N.H. Rev. Stat. Ann. § 358-A:2; (2) tortious interference with a contractual relationship; (3) tortious interference with Forrester's prospective advantage; and (4) trade secret misappropriation, *see* N.H. Rev. Stat. Ann. § 350-B. Forrester alleged that "Kobin met with [Wheelabrator] in Hampton, New Hampshire" in June 2007, and that "at said meeting, [Wheelabrator] stated to Kobin that [Wheelabrator's] patents and WES-PHix® technology covered DCPDHP provided to Kobin by [Forrester]." J.A. 204. This claim of U.S. patent coverage was allegedly false. Forrester further contended that "Kobin terminated its business with [Forrester] by reason of [Wheelabrator's] false statements and representations as above alleged." *Id.*

Wheelabrator removed the case to the United States District Court for the District of New Hampshire on April 21, 2010. Forrester filed a motion to remand to state court on May 3, 2010, arguing that the district court lacked subject-matter jurisdiction. In response, Wheelabrator argued that there was federal jurisdiction under

*Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800 (1988), because Forrester could only recover if it prevailed on a substantial question of U.S. patent law.

The district court denied Forrester's remand motion without written order on July 16, 2010. The district court then granted summary judgment for Wheelabrator in three separate orders. First, the district court granted summary judgment on Forrester's trade secret misappropriation claim, concluding that Forrester had provided no evidence of misappropriation. *Forrester Envtl. Servs., Inc. v. Wheelabrator Techs., Inc.*, No. 10-cv-154, 2011 WL 6300536 (D.N.H. Dec. 16, 2011). Second, the district court granted summary judgment that Forrester's remaining claims were barred by the applicable statute of limitations "except to the extent they are premised upon alleged misrepresentations made to representatives of Kobin . . . by Wheelabrator on or around June 14, 2007." *Forrester Envtl. Servs., Inc. v. Wheelabrator Techs., Inc.*, No. 10-cv-154, 2012 WL 3420185, at *12 (D.N.H. Aug. 15, 2012). Finally, the district court granted summary judgment in favor of Wheelabrator on Forrester's remaining claims as to alleged misrepresentations made on or around June 14, 2007. *Forrester Envtl. Servs., Inc. v. Wheelabrator Techs., Inc.*, No. 10-cv-154, 2012 WL 3420487 (D.N.H. Aug. 15, 2012). The district court reasoned that Forrester had "not produced any admissible evidence that [it] suffered injury as a result of Wheelabrator's conduct on June 14, 2007," and that "injury is an essential element of each of [Forrester's] claims." *Id.* at *1. Forrester timely appealed.

## DISCUSSION

This case requires us to address at the outset the jurisdiction of the district court. "We review issues of jurisdiction de novo." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335 (Fed. Cir. 2008).

I

Under 28 U.S.C. § 1441(a), a defendant may remove to federal district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). As we stated in *Jim Arnold Corp. v. Hydrotech System, Inc.*:

> The question we must answer . . . is whether federal subject-matter jurisdiction would exist over this case had it originally been filed in federal court. If the answer is yes, then removal was proper, and the matter is before us on the merits; if the answer is no, then removal was improper and federal courts are without jurisdiction to determine the cause.

109 F.3d 1567, 1571 (Fed. Cir. 1997).

The question here is whether the district court would have had original jurisdiction under 28 U.S.C § 1338, which gives federal district courts original jurisdiction over "any civil action arising under any Act of Congress relating to patents." 28 U.S.C. § 1338(a). In *Christianson v. Colt Industries Operating Corp.*, the Supreme Court held that a claim may "aris[e] under" the patent laws even where patent law did not create the cause of action, provided that the "well-pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law." 486 U.S. 800, 808–09 (1988). Thus, even a cause of action created by state law may "aris[e] under" federal patent law within the meaning of 28 U.S.C. § 1338 if it involves a patent law issue that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state

balance approved by Congress." *Gunn v. Minton*, 568 U.S. ___, ___, 133 S. Ct. 1059, 1065 (2013).[2]

In its recent decision in *Gunn v. Minton*, the Supreme Court made clear that state law legal malpractice claims will "rarely, if ever, arise under federal patent law," even if they require resolution of a substantive question of federal patent law. 568 U.S. at ___, 133 S. Ct. at 1065, 1067. The Court reasoned that while such claims may "necessarily raise disputed questions of patent law," those questions are "not substantial in the relevant sense." *Id.* at 1065–66. The Court emphasized that "[b]ecause of the backward-looking nature of a legal malpractice claim, the question is posed in a merely hypothetical sense" and that "[n]o matter how the state courts resolve that hypothetical 'case within a case,' it will not change the real-world result of the prior federal patent litigation." *Id.* at 1066–67. Because the malpractice claim portended no forward-looking consequences and created no real possibility of inconsistent judgments between state and federal courts, and in view of the "'especially great'" state interest in regulating lawyers, the Court concluded that the patent

---

[2] The language of section 1338 parallels that of section 1331, which gives district courts original jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. With respect to district courts' general "federal question jurisdiction" under section 1331, the Supreme Court has long held that state law claims may sometimes "aris[e] under" federal law for the purposes of district court jurisdiction. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312–14 (2005). And in *Christianson* and *Gunn*, the Supreme Court made clear that the same test applies whether the district court's potential jurisdiction is premised on section 1331 or section 1338. *Christianson*, 486 U.S. at 808–09; *Gunn*, 568 U.S. at ___, 133 S. Ct. at 1064.

law issues were not sufficiently "substantial" to create federal jurisdiction. *See id.* at 1066–68 (quoting *Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975)).

## II

Wheelabrator argues that Forrester's claims necessarily raise a substantial issue of patent law because Forrester "seeks relief based upon allegations that [Wheelabrator] has made a false statement about a United States patent" and "such allegations necessarily require the trial court to construe the claims of the patent in order to determine whether the alleged statements were, indeed, false." Appellee's Br. 30.

In the past, we have concluded that similar state law claims premised on allegedly false statements about patents raised a substantial question of federal patent law. For example, in *Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.*, we concluded that the plaintiff's state law business disparagement claims arose under patent law for the purposes of 28 U.S.C. § 1338. 986 F.2d 476, 478 (Fed. Cir. 1993). We noted that under state law, "a business disparagement claim requires [the] plaintiff to prove . . . the falsity of [the] defendant's allegedly disparaging statements." *Id.* There, the allegedly disparaging statement was an accusation of patent infringement; thus, we concluded that in order to prove the falsity of that statement, the plaintiff would have to "show that its product does not infringe the . . . patent." *Id.* Reasoning that the infringement issue presented a substantial question of patent law, we concluded that the claims arose under federal patent law for the purposes of § 1338. *Id.* at 478–79. Similarly in *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, the plaintiff asserted a claim for "injurious falsehood" on the theory that the defendant falsely claimed to "hold exclusive rights to make or sell window shades covered by one or more" patents. 153 F.3d 1318, 1329 (Fed. Cir. 1998) (quotation marks omitted),

*overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999) (en banc). We concluded that the plaintiff's claim arose under federal patent law because the question of falsity turned on issues of validity and enforceability, which presented "a substantial question of federal patent law." *Hunter Douglas*, 153 F.3d at 1329–31.

Those cases may well have survived the Supreme Court's decision in *Gunn*. Unlike the purely "backward-looking" legal malpractice claim in *Gunn*, 568 U.S. at ___, 133 S. Ct. at 1066–67, permitting state courts to adjudicate disparagement cases (involving alleged false statements about U.S. patent rights) could result in inconsistent judgments between state and federal courts. For example, a federal court could conclude that certain conduct constituted infringement of a patent while a state court addressing the same infringement question could conclude that the accusation of infringement was false and the patentee could be enjoined from making future public claims about the full scope of its patent as construed in federal court.

But this possibility of future conflict does not arise here. Wheelabrator's allegedly inaccurate statements regarding its patent rights concerned conduct taking place entirely in Taiwan. Those statements did not concern activities that could infringe U.S. patent rights, and it is not entirely clear why the Taiwanese entities in this case cared about the extent of Wheelabrator's U.S. patent rights. The use of a patented process outside the United States is not an act of patent infringement.[3] While the

---

[3] See 35 U.S.C. § 271(a) ("[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . infringes the patent." (emphasis added)); *see also Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1357 (Fed. Cir. 2008) ("A plaintiff must prove that allegedly infringing activity

importation into the United States of a product produced by a U.S. patented process can constitute infringement, *see, e.g.*, 35 U.S.C. § 271(g); *Bayer AG v. Housey Pharm., Inc.*, 340 F.3d 1367, 1371 (Fed. Cir. 2003), there is no suggestion here that any product was being imported into the United States. Therefore there is no prospect of a future U.S. infringement suit arising out of Kobin's use of WES-PHix or FESI-BOND in Taiwan, and accordingly no prospect of inconsistent judgments between state and federal courts. Moreover, the '356, '233, and '114 patents have all now expired, so there is also no prospect that future conduct in the U.S. could lead to an infringement suit regarding those patents. Here, as in *Gunn*, the potential conflict is purely "hypothetical." *See* 568 U.S. at ___, 133 S. Ct. at 1067.

Wheelabrator argues that this case nevertheless raises a substantial question of federal patent law because "resolution of the claim construction . . . issues necessarily raised by [Forrester's] Amended Petition would have . . . potential preclusive effects in any future litigation involving the patents-in-issue." Appellee's Supp. Br. 2 (emphasis removed). But the Supreme Court rejected a related argument in *Gunn*, concluding that any such collateral estoppel effect "would be limited to the parties and patents that had been before the state court," and that "[s]uch 'fact-bound and situation-specific' effects are not sufficient to establish federal arising under jurisdiction."

---

took place in the United States to prevail on claims of patent . . . infringement . . . ."); *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1251 (Fed. Cir. 2000) ("'[T]he right conferred by a patent under our law is confined to the United States and its territories, and infringement of this right cannot be predicated of acts wholly done in a foreign country.'" (quoting *Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*, 235 U.S. 641, 650 (1915)).

568 U.S. at \_\_\_, 133 S. Ct. at 1067–68 (quoting *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006)).[4] Wheelabrator further argues that there is federal jurisdiction because Forrester seeks remedies that might be preempted by federal patent law. However, "[f]ederal pre-emption is ordinarily . . . a defense to the plaintiff's suit," and "[a]s a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). Wheelabrator's jurisdictional arguments are therefore without merit.[5]

---

[4] Forrester states that "[s]ince there is no claim of infringement, and there is no federal jurisdiction under the patent laws, any [claim] construction by the state court could have no precedential or binding effect on a subsequent patent infringement . . . action in federal court." Appellant's Supp. Br. 2. We have no occasion here to decide what collateral estoppel effect such a state court adjudication would have in future infringement litigation.

[5] Wheelabrator also asserts that Forrester's claim of "misappropriation of proprietary method," which was withdrawn when Forrester filed its second amended complaint, provides a separate basis for federal jurisdiction because it "required construction of patent claims." Appellee's Br. 28–29. With respect to that claim, Forrester accused Wheelabrator of "licens[ing] to Kobin" a method that "would constitute infringement" of several patents owned by Forrester if performed in the United States. J.A. 149. As Forrester's amended petition concedes, however, "Kobin's extraterritorial practice of the . . . method is not protected by U.S. [p]atent [l]aw." J.A. 149. Forrester's "misappropriation of proprietary method" claim therefore provides no better foothold for federal jurisdiction than Forrester's other claims regarding wholly extraterritorial conduct.

In sum, we conclude that even if the allegations contained in Forrester's complaint necessarily raise a question of patent law, the patent law issues are not "substantial in the relevant sense" under *Gunn*. *See* 568 U.S. at ___, 133 S. Ct. at 1066.[6] Because the district court lacked subject-matter jurisdiction over Forrester's claims, we vacate the district court's judgment and remand to the district court. On remand from this court, the district court shall remand the case to New Hampshire state court.

## VACATED and REMANDED

### COSTS

No costs.

---

[6]    Forrester also contends that the patent law issues in this case are not "necessarily raised" because "there are reasons unrelated to the provisions and purposes of the patent laws why [Forrester] may or may not be entitled to the relief [it] seek[s]." Appellant's Br. 2; *see also Christianson*, 486 U.S. at 810 (citing *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 26 (1983)). Because we find that the patent law issue here is not substantial under *Gunn*, we do not reach that issue.