# United States Court of Appeals for the Federal Circuit

---

**NEUROREPAIR, INC.,**
*Plaintiff-Appellant,*

**v.**

**THE NATH LAW GROUP AND ROBERT P. COGAN,**
*Defendants-Appellees,*

**AND**

**DOES 1-20,**
*Defendants.*

---

2013-1073

---

Appeal from the United States District Court for the Southern District of California in No. 09-CV-0986, Judge John A. Houston.

---

Decided: January 15, 2015

---

MATTHEW KLIPSTEIN, of Denver, Colorado, argued for plaintiff-appellant.

GREGOR A. HENSRUDE, Klinedinst PC, of San Diego, California, argued for defendants-appellees. With him on the brief were HEATHER L. ROSING and SAMUEL B. STROHBEHN.

_____

Before WALLACH, CHEN, and HUGHES, *Circuit Judges.*

WALLACH, *Circuit Judge.*

The question before this court is whether a California state court malpractice case involving patent law representation was properly removed to a federal court. Under the principles of *Gunn v. Minton*, 133 S. Ct. 1059 (2013), it was not.

Plaintiff-appellant NeuroRepair, Inc. ("NeuroRepair") appeals from a final judgment of the United States District Court for the Southern District of California granting partial summary judgment in favor of defendants-appellees The Nath Law Group and Robert P. Cogan (collectively, "Defendants") on July 12, 2011, as well as the district court's orders (1) denying NeuroRepair's motion for reconsideration on August 19, 2011, (2) granting Defendants' motion in limine with respect to lost licensing opportunity of March 12, 2012, (3) entering judgment on September 26, 2012, in favor of Defendants, and (4) denying NeuroRepair's motion for reconsideration on July 1, 2013, and all related post-judgment costs. Based on *Gunn v. Minton*, this court vacates and remands the district court's judgments with instructions to remand the case to California state court.

This court "[has] jurisdiction to decide whether the district court had jurisdiction under [28 U.S.C.] § 1338." *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 878 (Fed. Cir. 1983); *see also Scherbatskoy v. Halliburton Co.*, 125 F.3d 288, 291 (5th Cir. 1997) (finding the "right to determine if a district court has jurisdiction under [§] 1338" is a power that "concurrently exists with [the Federal Circuit and] the regional circuits"); *Shaw v. Gwatney*, 795 F.2d 1351, 1353 n.2 (8th Cir. 1986) (A federal appellate court carries out "traditional and inherent functions [such] as deter-

mining its own jurisdiction and supervising the exercise of jurisdiction by the district courts below it."); *cf. Maddox v. Merit Sys. Prot. Bd.*, 759 F.2d 9, 10 (Fed. Cir. 1985) ("If the MSPB does not have jurisdiction, then neither do we, except to the extent that we always have the inherent power to determine our own jurisdiction and that of the board.").

BACKGROUND

In December 2005, NeuroRepair retained Robert Cogan, an attorney with The Nath Law Group, to assist in the prosecution of certain patent applications. Over time, NeuroRepair became increasingly dissatisfied with what it viewed as slow progress and excessive legal fees, and in August 2007 NeuroRepair requested that Mr. Cogan transfer the relevant files to another law firm, Welsh & Katz, to continue prosecution before the United States Patent and Trademark Office ("USPTO"). In September 2007, Defendants filed a request to withdraw from representation of NeuroRepair before the USPTO, but continued to assist NeuroRepair with other matters.

NeuroRepair filed suit against Defendants in the San Diego Superior Court on March 20, 2009, alleging professional negligence, breach of fiduciary duty, breach of written contract, breach of oral contract, breach of implied covenant of good faith and fair dealing, negligent misrepresentation, and false promise. Defendants removed the case to federal district court on May 7, 2009, on the ground that it was "a civil action relating to patents." J.A. 55.

After the district court entered judgment in Defendants' favor on September 26, 2012, NeuroRepair timely filed this appeal challenging the district court's subject matter jurisdiction. The principal issue this court must address is whether jurisdiction in the district court was proper in light of the Supreme Court's recent pronouncement in *Gunn v. Minton*.

## Discussion

## I. Standard of review

"We review issues of jurisdiction de novo." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335 (Fed. Cir. 2008). Under 28 U.S.C. § 1441(a) (2012), a defendant may remove to federal district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." As this court stated in *Jim Arnold Corp. v. Hydrotech Systems, Inc.*:

> The question we must answer . . . is whether federal subject-matter jurisdiction would exist over this case had it originally been filed in federal court. If the answer is yes, then removal was proper, and the matter is before us on the merits; if the answer is no, then removal was improper and federal courts are without jurisdiction to determine the cause.

109 F.3d 1567, 1571 (Fed. Cir. 1997).

## II. Subject matter jurisdiction

At issue in this case is whether the district court would have had original jurisdiction under 28 U.S.C. § 1338,[1] which gives federal district courts original jurisdiction over "any civil action arising under any Act of

---

[1]    There does not appear to be a basis for jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship). "Where . . . appellants do not claim diversity of citizenship, there must be federal question jurisdiction." *Semiconductor Energy Lab. Co. v. Nagata*, 706 F.3d 1365, 1369 (Fed. Cir. 2013); *ExcelStor Tech., Inc. v. Papst Licensing GmbH & Co. KG*, 541 F.3d 1373, 1375 (Fed. Cir. 2008). No claim of diversity was made here.

Congress relating to patents." 28 U.S.C. § 1338(a).[2] In *Christianson v. Colt Industries Operating Corp.*, the Supreme Court held a claim may "aris[e] under" the patent laws even where patent law did not create the cause of action, provided the "well-pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law." 486 U.S. 800, 808–09 (1988).

In its recent decision in *Gunn v. Minton,* the Court made clear that state law legal malpractice claims will "rarely, if ever, arise under federal patent law," even if they require resolution of a substantive question of federal patent law. 133 S. Ct. at 1065. The Court reasoned that while such claims "may necessarily raise disputed questions of patent law," those questions are "not substantial in the relevant sense." *Id.* at 1065, 1066. The Court emphasized that "[b]ecause of the backward-looking nature of a legal malpractice claim, the question is posed in a merely hypothetical sense" and that "[n]o matter how the state courts resolve that hypothetical 'case within a case,' it will not change the real-world result of the prior federal patent litigation." *Id.* at 1066–67. In view of the absence of a question that was "significant to the federal system as a whole" and the "'especially great'" state interest in regulating lawyers, the Court concluded that

---

[2] The second sentence of § 1338(a) was amended by the Leahy–Smith America Invents Act, Pub. L. No. 112-29, § 19(a), 125 Stat. 284, 331 (2011) ("AIA"). NeuroRepair commenced this action before these amendments took effect on September 16, 2011, so this court applies the pre-AIA version of the statute. AIA § 19(e), 125 Stat. at 333; *see also Wawrzynski v. H.J. Heinz Co.*, 728 F.3d 1374, 1378 (Fed. Cir. 2013) (actions commenced before September 16, 2011, are not subject to the AIA amendments).

Congress had not intended to bar state courts from deciding state legal malpractice claims simply because they may involve an underlying hypothetical patent issue. *See id.* at 1066, 1068 (quoting *Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975)).

The Court in *Gunn* explained that its earlier decision in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), is properly viewed as setting forth a four-part test to determine when federal jurisdiction over a state law claim will lie. *Gunn*, 133 S. Ct. at 1065. Under this test, a cause of action created by state law may nevertheless "arise under" federal patent law within the meaning of 28 U.S.C. § 1338(a) if it involves a patent law issue that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* Although the events in the present matter transpired prior to the decision in *Gunn*, the Supreme Court's interpretation of federal civil law "must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the Supreme Court's] announcement of the rule." *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993).

### A.   NeuroRepair's suit would not "necessarily raise" issues of patent law

NeuroRepair's suit fails *Gunn*'s jurisdictional test. An issue of patent law is "necessarily raised" if "a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson*, 486 U.S. at 809; *see also Grable*, 545 U.S. at 315 (finding a federal issue to be an "essential element" of

the cause of action); *Gunn*, 133 S. Ct. at 1065 (noting the plaintiff's required showing in order to prevail "will necessarily require application of patent law to the facts of [his] case"). NeuroRepair's claims of professional negligence, breach of fiduciary duty, breach of written contract, breach of oral contract, breach of implied covenant of good faith and fair dealing, negligent misrepresentation, and false promise are each created by state, not federal, law. *See* J.A. 62–68. Therefore, a patent law issue will be necessarily raised only if it is a necessary element of one of the well-pleaded claims.

NeuroRepair's state law claims, as presented in its complaint of March 20, 2009, include a number of references to patent issues. For example, its First Cause of Action for professional negligence asserts Defendants breached their duty of care "by, among other things, failing to communicate with Plaintiff . . . ; failing to competently and effectively pursue the Patent Applications; . . . [and] failing to accurately record and bill time." J.A. 63.

However, because NeuroRepair's complaint sets forth multiple bases in support of its allegation of professional negligence, a court could find NeuroRepair is entitled to relief based on this allegation without ever reaching a patent law issue. *See Immunocept, LLC v. Fulbright & Jaworski, LLP*, 504 F.3d 1281, 1285 (Fed. Cir. 2007) ("Because it is the sole basis of negligence, the claim drafting error is a necessary element of the malpractice cause of action."). Therefore, it would not "necessarily require the application of patent law to the facts of [this] case" for NeuroRepair "to prevail on [its] legal malpractice claim." *Gunn*, 133 S. Ct. at 1065; *see also Christianson*, 486 U.S. at 812 ("Since there are reasons completely unrelated to the provisions and purposes of federal patent law why petitioners may or may not be entitled to the relief [they] see[k] . . . , the claim does not 'arise under' federal patent law.") (internal quotation marks and

citation omitted); *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (en banc) ("A plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when *every* legal theory supporting the claim requires the resolution of a federal issue."). Similarly, NeuroRepair could prevail on its remaining six causes of action under alternate bases that do not necessarily implicate an issue of substantive patent law.

### B.  At least one patent law issue is actually disputed

Although a court would not necessarily be required to reach the patent law issues that underlie the causes of action alleged by NeuroRepair, at least one patent law issue is actually disputed by the parties. NeuroRepair claims Defendants' wrongdoing hindered its ability to timely obtain patents of the same scope it would have obtained but for Defendants' delay and mishandling. Defendants counter that the patent did not issue sooner because the claims as initially presented were not patentable and that Defendants had not narrowed the claims because "NeuroRepair had expressly ordered [Defendants] not to." Appellees' Br. 26. Whether the patent could have issued earlier and with broader claims is thus actually disputed by the parties.

### C.   The patent issue in NeuroRepair's suit is not "substantial"

Even if the disposition of this matter necessarily required the resolution of patent law issues, those issues would not be of sufficient importance "to the federal system as a whole," as required under the third part of the *Gunn* test.  133 S. Ct. at 1066, 1068.  "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim 'necessarily raise[s]' a disputed federal issue . . . ." *Id.* at 1066.

The Supreme Court has described three nonexclusive factors that may help to inform the substantiality inquiry, none of which is necessarily controlling. *See MDS (Can.) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 842 (11th Cir. 2013); *see also Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 570 (6th Cir. 2007). First, a substantial federal issue is more likely to be present if a "pure issue of [federal] law" is "dispositive of the case." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006). Second, a substantial federal issue is more likely to be present if the court's resolution of the issue will control "numerous other cases." *Id.* Third, a substantial federal issue is more likely to be present if "[t]he Government . . . has a direct interest in the availability of a federal forum to vindicate its own administrative action." *Grable*, 545 U.S. at 315.

    i.    No pure issue of federal law is dispositive

NeuroRepair asserts Defendants' wrongdoing caused harm by, among other things, hindering its ability both to pursue the patent applications in a timely and effective manner and to obtain patents of the same scope it would have obtained but for Defendants' delay and mishandling. Although resolution of these assertions could involve the application of substantive patent law principles, it is not clear from the record that any particular substantive patent law issue or issues would need to be resolved. Both claim scope and timing of issuance are likely to depend primarily on the particular facts and circumstances of the prior art, timely responses to office actions, etc., rather than on the interpretation of federal law. This is therefore unlike cases where a distinct issue of federal law was dispositive of the case. *See, e.g., Gunn*, 133 S. Ct. at 1065, 1066 (finding the viability of an experimental-use argument to be actually disputed and central to resolution of the case, but concluding this issue was not substantial in the relevant sense); *Grable*, 545 U.S. at 311 (noting the underlying dispute centered on whether 26 U.S.C. § 6335

required personal service rather than service by mail); *Jang v. Bos. Scientific Corp.*, 767 F.3d 1334, 1336 (Fed. Cir. 2014) (noting "Jang's right to relief . . . depends on . . . whether the stents sold by [petitioners] would have infringed [Jang's patents]"). Instead, the present matter involves a question of federal law, at most, as only one of several elements needed to prevail. *See Empire HealthChoice*, 547 U.S. at 701 ("[I]t takes more than a federal element to open the 'arising under' door.") (internal quotation marks and citation omitted); *see also Mikulski*, 501 F.3d at 571 (Even if the federal issue is resolved in their favor, "plaintiffs must still prove the remaining elements of fraudulent misrepresentation (such as intent) or breach of contract (such as the existence of a contract).").

In addition, NeuroRepair's assertions with respect to patent scope and timing do not constitute the totality and perhaps not even the most significant part of the state law causes of action included in its complaint. These causes of action also include assertions of failure to communicate, overbilling, failure to accurately record time billed, failure to deliver work product, and misrepresentation of Cogan's expertise in neuroscience. Additional factual issues are raised in the parties' briefs, including whether Cogan represented himself as a partner of The Nath Law Group, whether he was in fact a partner, whether Cogan deliberately overbilled NeuroRepair, whether The Nath Law Group "deliberately concealed from NeuroRepair the firm's internal investigation of Cogan," Appellant's Br. 14, when NeuroRepair became aware of the basis for its suit, and when NeuroRepair became aware of Cogan's qualifications, Appellees' Br. 40–43. These and other factual issues related to NeuroRepair's claims of Defendants' professional conduct and alleged actions or inactions make clear this case does not present a "pure issue of law" that is "dispositive of the case."

ii. The court's decision is unlikely to control numer-
ous other cases

In arguing the resolution of the present matter will affect "subsequent litigation," *id.* at 26, Appellees suggest that if a state court adjudicates this case, "a third-party infringer could conceivably be found liable for infringing a patent that its own state court previously found to be unpatentable," *id.* at 27–28. This argument is unpersuasive. If a federal court finds a defendant liable for infringing a valid patent notwithstanding a prior state court determination of invalidity, it is self-evident the state court decision did not "control" the later federal court case.

Moreover, to the extent a state court must address issues of substantive patent law, the court is likely to focus on whether the invention was patentable as initially claimed, as reflected in the assertions of Appellees themselves. *See id.* at 26 (arguing "the claims *as initially presented* were not patentable") (emphasis added). Any determination of validity of claims that ultimately did not issue constitutes a hypothetical matter that would not affect the scope of any live patent. *See Byrne v. Wood, Herron & Evans, LLP*, 676 F.3d 1024, 1032 n.4 (Fed. Cir. 2012) (O'Malley, J., dissenting from the denial of the petition for rehearing en banc) (stating, in the context of a patent prosecution malpractice claim, "the patent issue in any malpractice action will involve only an academic inquiry into what likely would have happened absent the attorney negligence, and the answer will affect only the result of the state law claim, not the rights or scope of any live patent"). If the state court action would neither affect the scope of any live patent nor require resolution of a novel issue of patent law, it is unclear how it could control numerous other cases or impact the federal system as a whole.

### iii. The government does not have a direct interest in the availability of a federal forum to vindicate its own administrative action

"[Q]uestions of [federal] jurisdiction over state-law claims require careful judgments about the nature of the federal interest at stake." *Grable*, 545 U.S. at 317 (internal quotation marks and citation omitted). *Grable* involved a dispute over title to real property, a quintessential state law matter. *See Or. ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 378 (1977) ("This Court has consistently held that state law governs issues relating to . . . real property, unless some other principle of federal law requires a different result."). The central issue, however, was whether the Internal Revenue Service ("IRS"), in seizing Grable's property to satisfy a delinquent tax debt and later selling the property to the defendant, had failed to notify Grable "in the exact manner required by [26 U.S.C.] § 6335(a)." *Grable*, 545 U.S. at 311. Resolution of the dispute required a determination of whether § 6335(a) required personal service or allowed service to be made by certified mail, *id.*, a determination that would directly impact IRS practices. In finding federal jurisdiction proper, the Court noted the government's "strong interest in the prompt and certain collection of delinquent taxes," and the importance of ensuring the IRS could "satisfy its claims from the property of delinquents." *Id.* at 315 (internal quotation marks omitted). Given these considerations, the government had "a direct interest in the availability of a federal forum to vindicate its own administrative action." *Id.*

The federal interest asserted to be at stake in the present matter is far more nebulous than in *Grable*. Appellees assert state court jurisdiction "would be a recipe for inconsistency," Appellees' Br. 28, and "[i]f state courts start ruling on issues of this nature, subsequent patent prosecutions and litigation arising out of those patents will be difficult, to say the least," *id.* at 26. These vague

assertions, which do not contain citations to authority, do not convincingly establish the USPTO or any other government agency has a "direct interest" in the outcome of this dispute, which is between private parties and relates to alleged legal malpractice and other state law claims. *Grable*, 545 U.S. at 315.

### D. If cases such as NeuroRepair's were heard in federal court, it would disrupt the federal-state balance

Finally, to the extent federal interests are implicated by NeuroRepair's state law claims, they do not outweigh the "especially great" interests of the state in regulating that state's lawyers. *See Gunn*, 133 S. Ct. at 1068. Since *Gunn*, courts considering alleged violations of a variety of state laws have declined to find federal question jurisdiction notwithstanding the presence of an underlying issue of patent law. *See, e.g., Forrester Envtl. Servs. Inc. v. Wheelabrator Techs., Inc.*, 715 F.3d 1329 (Fed. Cir. 2013) (tortious interference with a contractual relationship); *MDS (Can.),* 720 F.3d at 842 (breach of contract); *Mirowski Family Ventures, LLC v. Bos. Scientific Corp.*, 958 F. Supp. 2d 1009 (S.D. Ind. 2013) (breach of patent license agreement); *Airwatch LLC v. Good Tech. Corp.*, No. 1:13-cv-2870-WSD, 2014 WL 1651964 (N.D. Ga. Apr. 24, 2014) (defamation); *Bonnafant v. Chico's FAS, Inc.*, No. 2:13-cv-893-FtM-29CM, 2014 WL 1664554 (M.D. Fla. Apr. 25, 2014) (state whistleblower legislation).

In sum, federal jurisdiction is lacking here under *Gunn* because no federal issue is necessarily raised, because any federal issues raised are not substantial in the relevant sense, and because the resolution by federal courts of attorney malpractice claims that do not raise substantial issues of federal law would usurp the important role of state courts in regulating the practice of law within their boundaries, disrupting the federal-state balance approved by Congress.

### III. Defendants have not effectively distinguished *Gunn*

Defendants seek to distinguish *Gunn* on the basis that it involved alleged malpractice within the patent litigation context while the present matter involves alleged malpractice within the patent prosecution context. *Gunn* made no such distinction. *See* 133 S. Ct. at 1066–67 ("Because of the backward-looking nature of *a legal malpractice claim*, the question is posed in a merely hypothetical sense.") (emphasis added); *id.* at 1065 ("[S]tate legal malpractice claims based on *underlying patent matters* will rarely, if ever, arise under federal patent law . . . .") (emphasis added). Accepting Defendants' invitation to carve out a broad exception for patent prosecution malpractice would conflict with the Supreme Court's description of such exceptions as comprising a "slim category." *Id.* at 1065; *see also Empire HealthChoice*, 547 U.S. at 699 (describing exceptions to this rule as a "special and small category"). The number of patent-related malpractice cases considered by the Federal Circuit demonstrates that such cases have not been rare. *See, e.g.*, *Byrne*, 676 F.3d at 1037 (O'Malley, J., dissenting).

Defendants further attempt to distinguish *Gunn* by arguing that NeuroRepair's patents were undergoing prosecution at the time of the litigation, and so any court decision with respect to the malpractice claim could have a real-world result and would not be backward-looking. However, as already explained, the outcome of this dispute is not likely to control numerous other cases. *See supra* Part II.C.ii. In addition, the *Gunn* Court considered and rejected the argument that "state courts' answers to hypothetical patent questions can sometimes have real-world," forward-looking effects, such as where a state court's interpretation of claim scope impacts a USPTO examiner's later consideration of a continuation application related to the earlier-litigated patent. 133 S.

Ct. at 1067. In rejecting this argument, the Court expressed doubt that an examiner would be bound by a state court's interpretation, and found in any event such effects would be "'fact-bound and situation-specific'" and any forward-looking results would be limited to the parties and patents that had been before the state court. *Id.* at 1068 (quoting *Empire HealthChoice*, 547 U.S. at 701). Similarly, it noted that "federal courts are of course not bound by state court case-within-a-case patent rulings." *Gunn*, 133 S. Ct. at 1067.

Addressing what would have happened had the alleged bad acts of Defendants not occurred requires a court to engage in precisely the sort of backward-looking, hypothetical analysis contemplated in *Gunn*. Exercise of federal jurisdiction is therefore improper.

CONCLUSION

For these reasons, this court

**VACATES AND REMANDS TO THE DISTRICT COURT WITH INSTRUCTIONS TO REMAND THE CASE TO CALIFORNIA STATE COURT**