Inhold, LLC v. PureShield, Inc., 2021 NCBC 2.

STATE OF NORTH CAROLINA

GUILFORD COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 4841

INHOLD, LLC; and NOVALENT, LTD.,

               Plaintiffs,

    v.

PURESHIELD, INC.; JOSEPH RAICH; and VIACLEAN TECHNOLOGIES, LLC,

               Defendants.

**ORDER AND OPINION ON
PLAINTIFFS' MOTION FOR
LEAVE TO FILE SECOND
AMENDED COMPLAINT**

1.    Plaintiffs Inhold, LLC and Novalent, Ltd. have moved for leave to file a second amended complaint. (ECF No. 48.) Defendants Joseph Raich, PureShield, Inc., and ViaClean Technologies, LLC oppose the motion. Having considered all matters of record and the arguments of counsel, the Court **GRANTS** the motion in part.

> *Tuggle Duggins P.A., by Jeffrey S. Southerland, Brandy L. Mansouraty, and Richard W. Andrews, for Plaintiffs Inhold, LLC and Novalent, Ltd.*
>
> *Parker Poe Adams & Bernstein LLP, by Sarah F. Hutchins, C. Kyle Musgrove, and Katherine S. Clarke, and Crowell & Moring LLP, by Brian Paul Gearing, Ali H.K. Tehrani, and Joshua M. Rychlinski, for Defendants PureShield, Inc., Joseph Raich, and ViaClean Technologies, LLC.*

Conrad, Judge.

## I.
## BACKGROUND

2.    This case began as a trade-secret dispute. Inhold and Novalent are related companies that make and sell antimicrobial protectant products. They allege that Raich, a former member of Inhold, stole trade secrets and other confidential

information. They also allege that PureShield and ViaClean Technologies—each affiliated with Raich—are using the trade secrets to make competing products. The complaint, as amended, includes claims for breach of fiduciary duty, constructive fraud, misappropriation of trade secrets, unfair or deceptive trade practices, civil conspiracy, and breach of contract. (*See, e.g.*, Am. Compl. ¶¶ 97, 104, 120, 140, 150, 158, ECF No. 16.) An earlier order describes these claims and allegations in more detail. *See Inhold, LLC v. PureShield, Inc.*, 2020 NCBC LEXIS 107 (N.C. Super. Ct. Sept. 22, 2020).

3.      Plaintiffs now seek to introduce a related patent dispute. (*See* Proposed 2d Am. Compl. ¶¶ 95–151, ECF No. 48.1 ["SAC"].) In 2014, Inhold gave PureShield a "non-exclusive, non-transferable" license to four patents[1] and any "other U.S. patents issuing from applications filed by or for [Inhold] claiming priority from or substantially the same subject matter disclosed in the Patents." (License Agrmt. Arts. I(a), II, Ex. A, ECF No. 48.6.) PureShield obtained not only the rights to make, use, and sell products embodying the patents but also the right to "prosecute and bring any and all actions for infringement." (License Agrmt. Arts. II, VI(i).) The agreement was to continue until the expiration of the licensed patents as well as any trademarks and Environmental Protection Agency registrations "listed in Exhibit A." (License Agrmt. p.1, Art. V(a).) Oddly, Exhibit A lists no trademarks or EPA registrations. According to Plaintiffs, there were no other patents from applications filed by or for Inhold, and all four named patents ("Inhold Patents") have since

---

[1] The four named patents are U.S. Patent Nos. 5,954,869; 6,113,815; 6,120,587; and 6,762,172.

expired, meaning that the license agreement has expired too. (*See* SAC ¶¶ 107, 108, 223(a).)

4.   But PureShield disagrees. After this case was filed, it began sending cease-and-desist letters to companies in the market for antimicrobial protectants, including customers of Novalent. (*See* SAC ¶¶ 111–14, 117.) In these letters, PureShield claims that it has the right to enforce the four Inhold Patents and six other patents that were issued to Novalent ("Novalent Patents").[2] (*See* SAC Ex. F, ECF No. 48.8.) In September 2020, PureShield sued one recipient for infringement of all ten patents in the United States District Court for the Eastern District of Texas. *See PureShield, Inc. v. Allied BioScience, Inc.*, No. 4:20-cv-734 (E.D. Tex.).

5.   This motion followed a month later. Put simply, Plaintiffs claim that PureShield is asserting some patent rights that it no longer has (because the license from Inhold expired) and some that it never had (because Novalent was not a licensor). (*See* SAC ¶¶ 95–101, 106, 107, 223.) At least one customer has allegedly stopped doing business with Novalent because of the litigation threat. (*See* SAC ¶ 149.) Plaintiffs therefore wish to settle the parties' rights through a claim for declaratory judgment, (*see* SAC ¶ 223), to add new claims for tortious interference and defamation, (*see* SAC ¶¶ 226–39), and to expand their existing claims for unfair or deceptive trade practices and civil conspiracy, (*see, e.g.*, SAC ¶¶ 191(j)–(o), 203, 207). Finally, Plaintiffs seek to enjoin Defendants from asserting any rights to the

---

[2] The six Novalent Patents are U.S. Patent Nos. 9,624,384; 9,744,120; 10,010,080; 10,328,020; 10,405,553; and 10,531,664.

patents, threatening to enforce them, and making legal filings premised on rights granted by the license agreement. (*See* SAC ¶¶ 240–43.)

6. Defendants oppose the motion on the ground that this Court is the wrong forum for resolving the patent feud. Shortly after the motion was filed, PureShield and ViaClean Technologies sued Plaintiffs in the United States District Court for the Middle District of North Carolina, requesting a declaratory judgment on issues nearly identical to those raised in the proposed second amended complaint. *See PureShield, Inc. v. Inhold, LLC*, No. 1:20-cv-1025 (M.D.N.C.). The district court in the Texas litigation then stayed the patent claims there—at the request of PureShield and ViaClean Technologies—pending resolution of the license dispute in this action or in the Middle District of North Carolina. *See PureShield, Inc. v. Allied BioScience, Inc.*, No. 4:20-cv-734 (E.D. Tex. Dec. 4 & 11, 2020) (Dkt. Nos. 17, 18).

7. After full briefing, the Court held a hearing on December 17, 2020, at which all parties were represented by counsel. The motion is now ripe for determination.

II.
ANALYSIS

8. Leave to amend pleadings should be "freely given when justice so requires." N.C. R. Civ. P. 15(a). Proper reasons for denying a motion to amend include undue delay, unfair prejudice, bad faith, futility of the amendment, and repeated failure to cure defects by previous amendments. *See Williams v. Owens*, 211 N.C. App. 393, 394, 712 S.E.2d 359, 360 (2011) (citation omitted).

9. Defendants oppose the motion solely on the basis of futility. They argue that the proposed claims arise under federal patent law and therefore fall outside the

subject matter jurisdiction of this Court. They also argue that some claims are preempted and that the requested relief impermissibly intrudes on pending and future federal litigation. The Court begins with its jurisdiction to decide patent issues in the context of state-law claims.

## A. Federal Patent Jurisdiction

10. "Federal courts have exclusive jurisdiction over cases 'arising under any Act of Congress relating to patents.'" *Gunn v. Minton*, 568 U.S. 251, 253 (2013) (quoting 28 U.S.C. § 1338(a)). Usually, a case arises under federal patent law "when federal law creates the cause of action asserted." *Id.* at 257 (citation omitted). A good example is a claim for patent infringement. *See* 35 U.S.C. §§ 271, 281.

11. There are no claims of that sort here. Each claim added or expanded by the proposed amendment is premised on a contract dispute, namely whether the license agreement allows PureShield to enforce the ten patents at issue. Plaintiffs seek a declaratory judgment that PureShield has no right under that agreement to enforce any of the ten. (*See* SAC ¶ 223.) They also claim, as a result, that Defendants' assertion of rights to the patents—through cease-and-desist letters, other communications, and litigation—is both false and tortious. (*See* SAC ¶¶ 226–39.)

12. Thus, the issue is whether these claims arise under federal patent law even though all indisputably originate in state law. As the United States Supreme Court recently reaffirmed, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved

by Congress." *Gunn*, 568 U.S. at 258; *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mgf.*, 545 U.S. 308, 312–14 (2005) (addressing federal arising under jurisdiction in the context of 28 U.S.C. § 1331). This is a "special and small category" of cases. *Gunn*, 568 U.S. at 258 (quoting *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)).

13. Defendants argue that their rights under the license agreement depend on two issues of patent law. First, Defendants believe that the Novalent Patents claim "substantially the same subject matter" as the four Inhold Patents and are therefore covered by the license agreement. (License Agrmt. Art. I(a).) This issue, Defendants argue, turns on construction of the patents' claims, which is governed by federal patent law. *See, e.g.*, *TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 783 (Fed. Cir. 2019).

14. The second issue has to do with the difference between a patent assignment and a patent license. Under federal law, an assignee may enforce a patent by bringing suit in its own name, but a licensee may not. "In distinguishing between 'an assignment' and a 'mere license,'" courts "'examine whether the agreement transferred all substantial rights to the patents.'" *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1229 (Fed. Cir. 2019) (quoting *AsymmetRx, Inc. v. Biocare Med., LLC*, 582 F.3d 1314, 1319 (Fed. Cir. 2009)). Defendants contend that PureShield obtained all substantial rights and therefore may enforce the patents at issue as an assignee. (*See* Opp'n 2, 10, 14–16, ECF No. 64.) Whether that is so is a

question of federal law. *See, e.g.*, *Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049, 1060 (Fed. Cir. 2020).[3]

15. These patent-law issues do not create federal arising under jurisdiction, however, because they are not necessarily raised by the proposed claims. An issue of patent law is necessarily raised only when "patent law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988) (citations omitted). "If on the face of a well-pleaded complaint there are reasons completely unrelated to the provisions and purposes of the patent laws why the party may be entitled to the relief it seeks, then the claim does not arise under patent law." *Litéra Corp. v. Martinez*, 2017 NCBC LEXIS 35, at *19–20 (N.C. Super. Ct. Apr. 19, 2017) (citation, quotation marks, and alterations omitted); *see also Inspired Dev. Grp., LLC v. Inspired Prods. Grp., LLC*, 938 F.3d 1355, 1362 (Fed. Cir. 2019); *NeuroRepair, Inc. v. Nath L. Grp.*, 781 F.3d 1340, 1344 (Fed. Cir. 2015).

16. Consider the Novalent Patents. Plaintiffs contend that PureShield has no rights to these six patents because the license agreement does not name Novalent as a licensor. (*See* SAC ¶¶ 96–101, 105; License Agrmt. p.1.) Defendants insist that Novalent is bound by the agreement either as Inhold's successor or as its alter ego, but these are questions of state contract law and corporate law, not of federal patent law. If Plaintiffs prevail, they would be entitled to a finding that the license agreement does not extend to the Novalent Patents, and it would be unnecessary to

[3] Defendants also point to a third federal issue: whether PureShield has standing to sue for patent infringement in federal court. (*See* Opp'n 11, 14–16.) But Plaintiffs have asked the Court to decide only what rights each side possesses, not whether or in what combination the parties would have standing in federal court. (*See* SAC ¶ 223.)

construe any patent claims or to decide whether the two sets of patents claim substantially the same subject matter.

17. Likewise, Plaintiffs contend that any rights PureShield had to the Inhold Patents ceased to exist when the agreement expired. (*See, e.g.*, SAC ¶¶ 107, 108, 223(a).) This theory turns on a disputed understanding of the termination clause, which states that the agreement shall continue until the expiration of all licensed patents, trademarks, and EPA registrations. (*See* License Agrmt. Art. V(a).) Because the agreement does not list any trademarks or EPA registrations, Plaintiffs believe it expired when the last of the four Inhold Patents expired in July 2018. Again, if Plaintiffs prevail, they would be entitled to a finding that the rights granted by the agreement have since terminated, and it would be unnecessary to decide whether the agreement transferred all substantial rights to PureShield.

18. The upshot is that the Court could grant relief to Plaintiffs on these state-law theories "without ever reaching a patent law issue"—which Defendants' counsel conceded at the hearing. *NeuroRepair*, 781 F.3d at 1344. Thus, the proposed claims do not necessarily raise an issue of patent law. *See id.* at 1344–45; *see also Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (en banc) ("A plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when *every* legal theory supporting the claim requires resolution of a federal issue.").

19. Nor are the patent issues substantial. Whether a patent issue is substantial depends on "the importance of the issue to the federal system as a whole," not its "significan[ce] to the particular parties in the immediate suit." *Gunn*, 568 U.S. at

260. Examples include pure issues of federal law, issues that will control numerous other cases, or the federal government's "interest in the availability of a federal forum to vindicate its own administrative action." *Inspired Dev. Grp.*, 938 F.3d at 1364 (quoting *NeuroRepair*, 781 F.3d at 1345).

20. The patent issues raised by Defendants—claim construction and whether the license agreement is an assignment—are "fact-bound and situation-specific. This case does not present a context-free interpretation of a patent statute, but requires merely that the court apply patent law to the facts of the case." *AntennaSys, Inc. v. Aqyr Techs., Inc.*, 976 F.3d 1374, 1382 (Fed. Cir. 2020); *see also NeuroRepair*, 781 F.3d at 1346. If and when the patent issues become ripe, this Court "can be expected to hew closely to the pertinent federal precedents." *Gunn*, 568 U.S. at 262; *see also AntennaSys*, 976 F.3d at 1382. These case-specific issues are not substantial in the sense meant by *Gunn*.

21. Defendants seem to argue that claim construction is always a substantial federal issue. (*See* Opp'n 12–13.) But the Federal Circuit recently threw cold water on that notion, and it is plainly inconsistent with the reasoning of *Gunn*. *See AntennaSys*, 976 F.3d at 1381–82.

22. Defendants also argue that a claim construction by this Court or a determination about PureShield's status as assignee or licensee would affect other cases, including the pending cases in the Middle District of North Carolina and the Eastern District of Texas. (*See* Opp'n 13.) Perhaps so, but a patent issue is not substantial simply because it is "future-looking or nonhypothetical." *Inspired Dev.*

*Grp.*, 938 F.3d at 1367. The preclusive effect, if any, of this Court's decisions would be limited to *these* patents and *these* parties. "Such 'fact-bound and situation-specific' effects are not sufficient to establish federal arising under jurisdiction." *Gunn*, 568 U.S. at 263 (quoting *Empire HealthChoice*, 547 U.S. at 701); *see also Inspired Dev. Grp.*, 938 F.3d at 1368 (holding that no substantial patent issue existed when, "[a]s pled, this claim is about a particular relationship" and "fundamentally depends on the existence of the relationship between the parties").

23. In sum, Plaintiffs' proposed claims do not necessarily raise any substantial issue of patent law. The claims are therefore not subject to exclusive federal jurisdiction, and an amendment to add them would not be futile for want of jurisdiction.

## B. *Noerr-Pennington* Immunity

24. The proposed claims for tortious interference and defamation are based on Defendants' allegedly wrongful assertion of patent rights in cease-and-desist letters and other communications with third parties. Defendants contend that these claims are futile because they are "preempted under the *Noerr-Pennington* doctrine." (Opp'n 17.)

25. This argument seems to muddle preemption with the adjacent but distinct concept of *Noerr-Pennington* immunity. The Federal Circuit has held that "federal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation." *Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367,

1374 (Fed. Cir. 2004). Separately, the *Noerr-Pennington* doctrine derives from the First Amendment, not patent law, and immunizes from tort liability those who bring lawsuits in good faith. *See IGEN Int'l, Inc. v. Roche Diagnostics GMBH*, 335 F.3d 303, 310 (4th Cir. 2003). Backed by shared policies, neither doctrine protects sham litigation or objectively baseless claims. *See Globetrotter*, 362 F.3d at 1375–77; *IGEN Int'l*, 335 F.3d at 312.

26. For present purposes, the question is whether the proposed claims, taking the underlying allegations as true, are necessarily preempted by patent law or barred by *Noerr-Pennington* immunity. They are not. Plaintiffs have alleged that Defendants had no justification for claiming any rights to the patents or for threatening others with enforcement, sent the cease-and-desist letters in bad faith retaliation for this lawsuit, and engaged in "baseless and bad faith" litigation in the Eastern District of Texas. (*E.g.*, SAC ¶¶ 191, 231, 236.) In addition, Plaintiffs allege that Defendants' conduct is "willful, wanton, and intentional." (SAC ¶ 233.) Numerous courts have held that state-law claims are not preempted or barred when based on similar allegations that the defendant "falsely and in bad faith 'laid claim to patents they do not own, or hold any other interest in.'" *S3 Graphics Co. v. ATI Techs. ULC*, No. 11-1298, 2014 U.S. Dist. LEXIS 16928, at *7 (D. Del. Feb. 11, 2014); *see also Pelfrey v. Mahaffy*, No. 17-cv-80920, 2018 U.S. Dist. LEXIS 21114, at *16–17 (S.D. Fla. Feb. 7, 2018); *Wintrode Enters., Inc. v. PSTL LLC*, No. CV-14-01214, 2014 U.S. Dist. LEXIS 118118, at *9 (D. Ariz. Aug. 25, 2014); *Jarrow Formulas, Inc. v. Int'l Nutrition Co.*, 175 F. Supp. 2d 296, 311 (D. Conn. 2001).

27. Defendants contend that whether their actions were objectively baseless "is also a federal question over which state courts do not have jurisdiction." (Opp'n 18.) This is incorrect. Preemption is a defense and therefore does not create arising under jurisdiction. *See, e.g.*, *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988) (noting that arising under jurisdiction is determined by looking solely to the well-pleaded complaint's affirmative claims, without regard to a defendant's defenses); *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 186–87 (4th Cir. 2002) (noting that preemption does not create arising under jurisdiction because "preemption is asserted as 'a federal defense to the plaintiff's suit' " and accordingly "does not appear on the face of a well-pleaded complaint" (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987))).

28. Furthermore, the allegedly false statements made by Defendants all have to do with their rights under the license agreement. The only patent issues implicated by that dispute are the ones discussed above, which are neither necessarily raised nor substantial.

29. Accordingly, the claims for defamation and tortious interference are not futile due to principles of preemption or *Noerr-Pennington* immunity.

### C. Injunctive Relief

30. Plaintiffs also seek to add a claim for injunctive relief. An injunction is a remedy, not a cause of action. *See, e.g.*, *Revelle v. Chamblee*, 168 N.C. App. 227, 230, 606 S.E.2d 712, 714 (2005). The Court therefore denies the proposed addition of an injunction claim. This is without prejudice to Plaintiffs' right to seek an injunction

as a remedy and as part of their prayer for relief. But two points of caution bear mention. At the hearing, Plaintiffs' counsel wisely conceded that this Court lacks jurisdiction to enjoin federal proceedings or to enjoin a party from proceeding in federal court. *See Baker v. Gen. Motors Corp.*, 522 U.S. 222, 236 n.9 (1998); *Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964). In addition, Plaintiffs should take note that "courts are deeply skeptical of requests to enjoin speech and expression" as unlawful prior restraints. *Ford v. Jurgens*, 2020 NCBC LEXIS 60, at *3 (N.C. Super. Ct. May 6, 2020).

## D. First to File Rule

31. Finally, Defendants invoke the first to file rule. This rule, followed by many federal courts, holds that "where two parallel suits are pending in state and federal court, the first suit should have priority." *VRCompliance LLC v. Homeaway, Inc.*, 715 F.3d 570, 574 (4th Cir. 2013) (citation and quotation marks omitted). In North Carolina courts, the more pertinent rule is the prior pending action doctrine, which Defendants acknowledge only indirectly. *See Signalife, Inc. v. Rubbermaid, Inc.*, 193 N.C. App. 442, 444–45, 667 S.E.2d 499, 500–01 (2008).

32. Even if the first to file rule applies, it is no reason to deny the amendment. Defendants contend that the first-filed case is the infringement suit in the Eastern District of Texas. (*See* Opp'n 21–22.) But the Texas action is not a "parallel suit" because Inhold and Novalent are not parties there. And in any event, PureShield and ViaClean Technologies convinced the district court to stay the infringement claims in that case so that the licensing dispute may proceed either here or in the

Middle District of North Carolina. *See PureShield, Inc. v. Allied BioScience, Inc.*, No. 4:20-cv-734 (E.D. Tex. Dec. 4 & 11, 2020) (Dkt. Nos. 17, 18).

33. Although the case pending in the Middle District of North Carolina does involve substantially the same issues and substantially the same parties, Defendants haven't argued that it is the first-filed action. (*See* Opp'n 22.) The reason they haven't is because they filed that case after Plaintiffs moved for leave to amend. As other courts have observed, "[a]nticipatory suits are disfavored because they are an aspect of forum-shopping. Courts are entitled to take into account, as an equitable consideration in application of the first-to-file rule, if an action is filed in anticipation of another suit." *Adidas Am., Inc. v. Payless Shoesource, Inc.*, No. CV 01-1655, 2003 U.S. Dist. LEXIS 25486, at *4–5 (D. Or. Sept. 15, 2003) (citations omitted) (granting motion to amend complaint); *see also Coca-Cola Bottling Co. Consol. v. Durham Coca-Cola Bottling Co.*, 141 N.C. App. 569, 579, 541 S.E.2d 157, 164 (2000) ("A defendant in a pending lawsuit should not be permitted to bring a declaratory suit involving overlapping issues in a different jurisdiction as a strategic means of obtaining a more preferable forum." (citation omitted)).

34. Defendants have offered no sound reason to conclude that the pendency of either federal case is a reason to deny Plaintiffs their choice of forum, particularly given North Carolina's preference for liberally allowing amendments.

III.
CONCLUSION

35. For these reasons, the Court **GRANTS** Plaintiffs' motion for leave to file a second amended complaint with one exception. The motion is **DENIED** as to the

tenth claim for injunctive relief without prejudice to Plaintiffs' right to seek an injunction as a remedy.

36.     The Court further **ORDERS** that Plaintiffs shall file their second amended complaint, as modified, no later than January 15, 2021.


        **SO ORDERED**, this the 8th day of January, 2021.


                                    /s/ Adam M. Conrad
                                    Adam M. Conrad
                                    Special Superior Court Judge
                                     for Complex Business Cases