# United States Court of Appeals for the Federal Circuit

---

**INSPIRED DEVELOPMENT GROUP, LLC, A FLORIDA LIMITED LIABILITY COMPANY,**
*Plaintiff/Counterclaim Defendant-Appellant*

**MITCHELL PRINE, INDIVIDUALLY,**
*Counterclaim Defendant*

**v.**

**INSPIRED PRODUCTS GROUP, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, DBA KIDSEMBRACE, LLC,**
*Defendant/Counterclaimant-Appellee*

---

2018-1616

---

Appeal from the United States District Court for the Southern District of Florida in No. 9:16-cv-80076-RLR, Judge Robin L. Rosenberg.

---

Decided: September 18, 2019

---

STEVEN L. BRANNOCK, Brannock & Humphries, Tampa, FL, argued for plaintiff/counterclaim defendant-appellant. Also represented by JOSEPH T. EAGLETON.

THOMAS A. DYE, Cozen O'Connor, West Palm Beach, FL, argued for defendant/counterclaimant-appellee. Also

represented by JAMES A. GALE, ARTHUR ROBERT WEAVER,
Miami, FL.

————————————

Before PROST, *Chief Judge*, NEWMAN and STOLL,
*Circuit Judges*.

PROST, *Chief Judge*.

Appellant Inspired Development Group, LLC ("Inspired Development") sued Appellee Inspired Products Group, LLC, d/b/a KidsEmbrace, LLC ("KidsEmbrace") for breach of contract and other related state law claims in federal district court on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a).  The district court granted summary judgment in KidsEmbrace's favor on certain claims and Inspired Development appealed to the U.S. Court of Appeals for the Eleventh Circuit.  After the Eleventh Circuit discovered that diversity jurisdiction did not exist, the district court concluded on remand that it retained jurisdiction over the suit based on federal question jurisdiction.  The Eleventh Circuit transferred the case to this court to determine whether the parties' claims "aris[e] under" the patent laws pursuant to 28 U.S.C. § 1338(a). For the reasons below, we vacate and remand for dismissal of the lawsuit for lack of jurisdiction.

BACKGROUND

I

This case arose as a business dispute.  After developing children's car seat designs in the shape of cartoon and comic book characters, Mitchell Prine formed Inspired Development. *Inspired Dev. Grp. v. Inspired Prods. Grp.*, No. 9:16-CV-80076, 2017 WL 411997, at *1 (S.D. Fla. Jan. 31, 2017).  Mr. Prine obtained several patents for the safety seats. *Id.*  The first design patent issued as U.S. Design Patent No. D524,559, which incorporated a representation of Batman into the car seat.  J.A. 2667–72.

Inspired Development held the patents as assignee. *Inspired Dev. Grp.*, 2017 WL 411997, at *1. With the help of some investors, Mr. Prine then formed a second company, KidsEmbrace, to manufacture and sell the car seats. *Id.* Mr. Prine acted as CEO of KidsEmbrace. *Id.* at *2.

In 2007, the two companies entered into an Exclusive Patent Licensing Agreement ("Agreement"), which granted KidsEmbrace an exclusive license to practice the patents to commercialize the car seats in exchange for certain royalties. *Id.* at *1.

In 2009, a third company entered the picture. KidsEmbrace sought additional investment from a Bulgarian corporation named Boliari, EAD ("Boliari"). *Id.* at *2. As a condition of its investment, Boliari made both Inspired Development and KidsEmbrace execute a Binding Letter of Agreement ("Binding Letter"). *Id.* The Binding Letter required Inspired Development to transfer the patent rights to KidsEmbrace in the event KidsEmbrace was acquired. In exchange, Inspired Development would receive a minimum royalty payment. *Id.*

Shortly after the deal with Boliari was struck, Mr. Prine was removed as CEO of KidsEmbrace. *Id.* Subsequently, KidsEmbrace began questioning the value of licensing Inspired Development's patents. *Id.* Eventually, KidsEmbrace unilaterally terminated the Agreement. *Id.* Inspired Development believed it was owed outstanding royalties under the Agreement and a lump-sum payment under the Binding Letter. *Id.*

## II

In 2016, Inspired Development filed suit against KidsEmbrace in the U.S. District Court for the Southern District of Florida, alleging breach of contract and other equitable state law claims.

Count I of the complaint alleged that KidsEmbrace breached the written terms of the Agreement.

J.A. 98 ¶¶ 34–35 (alleging Section 2 of Agreement required "the greater of $100,000 or one percent (1%)" of yearly "net sales" as well as late fees, which KidsEmbrace failed to pay in the fourth quarter of 2012 and all of 2013). Count II alleged breach of the Binding Letter. J.A. 99 ¶¶ 39–41 (alleging Section 5 of Binding Letter required "a minimum of $3,000,000 in total royalties during the duration of the Agreement," which KidsEmbrace refused to pay after "unjustifiably and unilaterally" terminating the Agreement). Count III pled a claim for unjust enrichment in the alternative to the breach of contract claims. *Id.* ¶ 43 ("As an alternative to Counts I and II (Breaches of the Agreement and Binding Letter, respectively), Plaintiff brings a cause of action against Defendant for unjust enrichment."). Count IV pled promissory estoppel. J.A. 100 ¶¶ 50–52.

In response, KidsEmbrace asserted counterclaims, which included breach of contract, fraud, negligent misrepresentation, restitution, and breach of fiduciary duty.

Both parties relied on diversity to establish subject matter jurisdiction over their respective claims. *See* 28 U.S.C. § 1332(a).

On summary judgment, the claim for breach of the Agreement (Count I) survived, *see Inspired Dev. Grp.*, 2017 WL 411997, at *3–5, but was later settled. The rest of the case was resolved entirely on state law grounds under Florida contract law. Inspired Development lost on its claim for breach of the Binding Letter (Count II), *id.* at *8, and equitable claims of unjust enrichment (Count III), *id.* at *9, and promissory estoppel (Count IV), i*d.* Inspired Development appealed to the Eleventh Circuit.

On appeal, the Eleventh Circuit spotted a potentially fatal problem with the case: diversity of citizenship might not exist. As the Eleventh Circuit explained, "to allege the citizenship of a limited liability company, a party must identify all the members of the limited liability company, and list the citizenship of each member." Jurisdiction

Question, *Inspired Dev. Grp. v. Inspired Prods. Grp.*, No. 17-11072 (11th Cir. Mar. 23, 2017) (discussing *Mallory & Evans Contractors & Eng'rs, LLC v. Tuskegee Univ.*, 663 F.3d 1304, 1305 (11th Cir. 2011)).  Neither party had done so in their pleadings.  The Eleventh Circuit issued a "Jurisdictional Question," finding that "the relevant pleadings did not sufficiently allege the citizenship of any party, as necessary to establish the district court's subject matter jurisdiction over the relevant claims in the first instance." *Id.*

The Eleventh Circuit's concerns were well founded.  After a closer examination of their respective members, the parties "admitted that they are not diverse."  Limited Remand, *Inspired Dev. Grp. v. Inspired Prods. Grp.*, No. 17-11072 (11th Cir. June 6, 2017); *see also* 28 U.S.C. § 1332(a)(1) (requiring an amount in controversy exceeding $75,000 and a claim between citizens of different states).  At this point, cut loose from its jurisdictional moorings, the dispute appeared to be headed for dismissal.[1]  But the case did not end there.

KidsEmbrace attempted to anchor jurisdiction on a different basis.  KidsEmbrace argued for "the first time on appeal that federal subject matter jurisdiction exists" because the case presented a federal question.  J.A. 2550.  The Eleventh Circuit remanded to let the district court answer that question in the first instance.

Before the district court, Inspired Development opposed the new jurisdictional theory.  It argued that because there was no diversity of citizenship and it only alleged state law claims, the case no longer belonged in federal court.  KidsEmbrace framed the state law breach of contract and equitable claims in the complaint as "arising

---

[1]  Inspired Development filed suit in Florida state court on similar claims.  *Inspired Dev. Grp. v. Inspired Prods. Grp.*, No. 2017-CA-004490 (Fla. 15th Jud. Cir.).

under" federal patent law rather than state law. KidsEmbrace also argued its state law counterclaims—which it had already voluntarily dismissed from the suit—provided a basis for staying in federal court.

The district court accepted KidsEmbrace's arguments, concluding it retained jurisdiction over this breach of contract action. *See* Order on Subject Matter Jurisdiction at 9, *Inspired Dev. Grp. v. Inspired Prods. Grp.*, No. 9:16-CV-80076 (S.D. Fla. Dec. 4, 2017) (concluding district court had "subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a)"). The case then returned to the Eleventh Circuit for review of that decision.

On appeal, however, the Eleventh Circuit revisited KidsEmbrace's motion to transfer the appeal to this court. In "the interests of justice and judicial economy," the Eleventh Circuit granted KidsEmbrace's motion to transfer, "expressly leav[ing] the question of whether federal subject matter jurisdiction exists under 28 U.S.C. § 1338(a) to be resolved by the Federal Circuit." *Inspired Dev. Grp. v. Inspired Prods. Grp.*, No. 17-11072, 2018 WL 1282412, at *1 (11th Cir. Feb. 22, 2018).

We have jurisdiction to decide whether the district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1338(a). *NeuroRepair, Inc. v. The Nath Law Grp.*, 781 F.3d 1340, 1342 (Fed. Cir. 2015).

DISCUSSION

I

"Subject matter jurisdiction is a question of law that we review de novo." *Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1360 (Fed. Cir. 2008); *see also Sec. & Exch.*

*Comm'n v. Mutual Benefits Corp.*, 408 F.3d 737, 741 (11th Cir. 2005) (same).[2]

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "Federal courts may hear only those cases over which they have subject matter jurisdiction." *Semiconductor Energy Lab. Co. v. Nagata*, 706 F.3d 1365, 1368 (Fed. Cir. 2013). Subject matter jurisdiction "may be based upon either diversity of citizenship or federal question jurisdiction." *Id.* at 1369.

"Where, as here, [the parties] do not claim diversity of citizenship, there must be federal question jurisdiction." *ExcelStor Tech., Inc. v. Papst Licensing GmbH & Co. KG*, 541 F.3d 1373, 1375 (Fed. Cir. 2008). By statute, federal district courts are authorized to exercise original jurisdiction in civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Federal courts have exclusive jurisdiction over cases 'arising under any Act of Congress relating to patents.'" *Gunn*, 568 U.S. at 253 (quoting 28 U.S.C. § 1338(a)).

---

[2]    At oral argument, the parties briefly explored whether we might review this jurisdictional issue under a "plausibility" standard as was used in *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 819 (1988). *See, e.g.*, Oral Arg. at 14:09–15:02, 33:51–34:41, No. 2018-1616, http://www.cafc.uscourts.gov/oral-argument-recordings. *Christianson* applied that standard to questions of "transfer" between federal courts pursuant to 28 U.S.C. § 1631. *Id.* ("[If] the transferee court can find the transfer decision plausible, its jurisdictional inquiry is at an end."). The Eleventh Circuit's transfer decision is not being challenged here.

For statutory purposes, a case will "arise under" federal law in two ways. *Id.* at 257. First, the case qualifies if federal law "creates the cause of action asserted." *Id.* This category accounts for the "vast bulk of suits" arising under federal law. *Id.*

Second, even if the claim "finds its origins in state rather than federal law," the Supreme Court has identified a "special and small category" of cases that nonetheless arise under federal law. *Id.* at 258. For this second "slim category," we apply the four-part *Gunn* test. *Id.* (applying test articulated in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005), to 28 U.S.C. § 1338(a)). If the *Gunn* test is met, then federal question jurisdiction is proper "because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (quoting *Grable*, 545 U.S. at 313–14).

## A

With regard to the first category, no claims here allege a cause of action created by federal patent law. KidsEmbrace cannot dispute this fact. This is a state law contract case for past due royalties. *See Wawrzynski v. H.J. Heinz Co.*, 728 F.3d 1374, 1380 (Fed. Cir. 2013) ("Breach of implied contract and unjust enrichment are state law counts.").

Nonetheless, KidsEmbrace contends that Count III was intended to be a "thinly disguised patent infringement claim" simply "masquerading" as a claim for unjust enrichment. Appellee's Br. 27. KidsEmbrace's arguments mischaracterize the pleadings. Count III pled a fallback theory of relief sounding in quasi-contract in the event the written contract was deemed unenforceable or not controlling. J.A. 99 ¶ 43; *see also Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. Dist. Ct. App. 2008) ("Florida courts have held that a plaintiff cannot pursue a

quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter."). Count III cannot therefore reasonably be viewed as a free-standing claim for patent infringement. Rather, it was a conditional claim for equitable relief under Florida law. Accordingly, KidsEmbrace's attempt to imply that Inspired Development engineered a claim for patent infringement under an alternative theory for unjust enrichment—which would only be available if the written agreements were un-enforceable—rings hollow. There is simply no support for KidsEmbrace's position.[3]

This matter does not fall into the first category of traditional "arising under" cases under 28 U.S.C. § 1338(a).

B

Consequently, the central question becomes whether this matter falls within the second category. We turn to the four-part *Gunn* test to answer that question. Under

---

[3]    Though we reach this conclusion based on our review of the pleadings in the complaint, we note that the district court's decision on summary judgment below is entirely consistent with our analysis. Indeed, the demise of Count III under Florida law echoes our own view of this claim as seeking traditional state law relief. As the district court concluded, Inspired Development "has not pled its unjust enrichment claim as a claim *in addition* to the matters addressed by contract in this case." *Inspired Dev. Grp.*, 2017 WL 411997, at *8. Instead, it "expressly pled Count III as being in the alternative to Count I and Count II." *Id.* Because the contracts in Counts I and II were deemed enforceable and controlling, Count III was precluded. *Id.* (citing Florida law). In the end, the district court determined that Count III stated an alternative equitable remedy, which so closely mirrored Counts I and II that it was barred in light of the written contracts.

*Gunn*, federal jurisdiction over a state law claim will lie if "a federal issue" is: (1) "necessarily raised," (2) "actually disputed," (3) "substantial," and (4) "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. All four elements must be satisfied. *Id.* Because the parties focused the majority of their dispute on Count III for unjust enrichment, we center our discussion on that claim and then address the other claims and counterclaims in due course.

1

We begin with the first requirement of *Gunn*, which asks whether a federal issue is "necessarily raised." "[A] patent law issue will be necessarily raised only if it is a necessary element of one of the well-pleaded claims." *NeuroRepair*, 781 F.3d at 1344. Here, a patent law issue was not necessarily raised in Count III.

Under Florida law, the "elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred [a] benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla.*, 667 So. 2d 876, 879 (Fla. Dist. Ct. App. 1996) (quoting *Hillman Const. Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. Dist. Ct. App. 1994)).

To meet these elements, Inspired Development's allegations hinge on showing that it conferred a benefit on KidsEmbrace in the form of an exclusive license, that KidsEmbrace knew of and benefited from this license, and that principles of equity require KidsEmbrace to pay for the benefit. According to the complaint:

45.   Plaintiff conferred a benefit on Defendant by *licensing and allowing Defendant to use its utility and design Patents* in the manufacturing and sale of the KidsEmbrace™ "Human Form" cartoon-and-superhero-themed children's safety seats.

46.   Defendant had knowledge of the benefit conferred and voluntarily *accepted and retained* the benefit conferred.

J.A. 100 ¶¶ 45–46 (emphases added); *see also* J.A. 96 ¶ 25 ("By the end of 2010, Defendant, through the use of Plaintiffs licensed Patents, began selling the 'Human Form' children's car safety seat . . . ."). By these allegations, one way Inspired Development could prove that KidsEmbrace "accepted and retained" a benefit at Inspired Development's expense was to show that KidsEmbrace used one or more of Inspired Development's "utility and design Patents" in the car seats it manufactured and sold. Thus, Inspired Development's unjust enrichment claim potentially raises a question of patent law regarding infringement.

Demonstrating infringement, however, is not the only way that Inspired Development could succeed on its claim. It is often the case that a licensee, and in particular an exclusive licensee, benefits from the grant of a license regardless of whether or not an infringing product is actually created. For example, if a product is possibly but not certainly infringing, an entity may procure a license in order to avoid uncertainty and litigation. The benefit in this case is the entity's ability to invest or have others invest in its products with greater confidence, as well as the avoidance of costs and fees associated with suit. As for an exclusive license, the entity also gains the benefit of ensuring that no other entity has the ability to create competing products that practice the patents at issue. Thus, Inspired Development could succeed on its claim by showing that by conferring the license on KidsEmbrace,

KidsEmbrace avoided litigation, acquired investment it may not have otherwise, or succeeded in preventing competition for a certain length of time. In this way, Inspired Development need not demonstrate that KidsEmbrace actually practiced the licensed patents, and the question of infringement is not a "necessary element" of the claim.[4]

2

Though not a necessary element of the claim for unjust enrichment, we note that the issue of whether KidsEmbrace used the patents is "actually disputed" here under the second *Gunn* requirement. KidsEmbrace denied it manufactured or sold products within the scope of the patents in an infringing manner. *See* J.A. 96–97 ¶ 25, 127 ¶ 25.

3

We now turn to the third *Gunn* requirement, requiring a "substantial" federal issue. Even if the state law claim here "necessarily raised" an issue of patent law that was "actually disputed," "the federal issue in this case is not substantial in the relevant sense." *Gunn*, 568 U.S. at 260.

In KidsEmbrace's view, the issue was substantial because patent infringement was "the gravamen of Inspired Development's unjust enrichment claim." Appellee's Br. 32. But KidsEmbrace's argument misses the mark. To meet the substantiality requirement under *Gunn*, "it is not

---

[4]    The terms of the written contract also align with this view. According to the pleadings, KidsEmbrace owed a minimum payment ($100,000) each year under the Agreement—regardless of whether any products were made or sold that practiced the patents. *See* J.A. 98 ¶ 34. KidsEmbrace allegedly failed to make this minimum payment in 2012 and 2013. *Id.* ¶ 35.

enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim 'necessarily raise[s]' a disputed federal issue, as *Grable* separately requires." *Gunn*, 568 U.S. at 260. Instead, the touchstone for "substantiality" is whether allowing state courts to resolve the case would undermine "the development of a uniform body of [patent] law." *Vermont v. MPHJ Tech. Invs., LLC*, 803 F.3d 635, 646 (Fed. Cir. 2015) (quoting *Gunn*, 568 U.S. at 261). Therefore, we consider "the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260.

Adopting our sister circuit's framework, we recently concluded that the Supreme Court had identified three factors that inform this substantiality inquiry. *NeuroRepair*, 781 F.3d at 1345 (citing *MDS (Can.), Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 842 (11th Cir. 2013)). A "substantial federal issue is more likely to be present" if:

    a) "a pure issue of [federal] law is dispositive of the case,"

    b) "the court's resolution of the issue will control numerous other cases,"

    c) "[t]he Government . . . has a direct interest in the availability of a federal forum to vindicate its own administrative action."

*Id.* (alterations in original) (citations omitted) (internal quotation marks omitted). Applying these factors to the present claims at issue, each confirms that there is no "substantial" issue of federal patent law.

a

With regard to the first *NeuroRepair* factor, the patent infringement issue here is not dispositive of whether Inspired Development is entitled to relief. As discussed, Inspired Development could prevail on its unjust enrichment claim without showing KidsEmbrace's products actually infringed. Furthermore, "the present matter involves a question of federal law, at most, as only one of several elements needed to prevail." *Id.* at 1346. Inspired Development also has to prove that KidsEmbrace had knowledge of the benefit. Moreover, Inspired Development cannot prevail on Count III as a matter of law if the written contracts are valid and controlling under state law.[5]      Thus, the first factor cuts against substantiality.

b

Turning to the second *NeuroRepair* factor, a state court's resolution of the issue here will not control "numerous other cases." KidsEmbrace contends that a state court's decision on infringement or invalidity could create conflicting rulings for other infringement cases in federal court. But we already rejected a similar argument in *NeuroRepair*. There, appellees argued that if a state court

---

[5]      The record below mirrors our conclusion. As discussed, the district court disposed of Inspired Development's claims based solely on state law grounds. Count III failed on the basis that Florida law does not recognize claims for unjust enrichment if an "express contract" is already in place between the parties concerning the subject matter. *Inspired Dev. Grp.*, 2017 WL 411997, at *8. Count IV failed for the same reason. *Id.* at *9. Count II failed because the contractual provision did not apply to KidsEmbrace and a condition precedent was not satisfied. *Id.* at *5–8 (applying Florida law).

adjudicated the case, "a third-party infringer could conceivably be found liable for infringing a patent that its own state court previously found to be unpatentable." *Id.* at 1346. Here, as there, this "argument is unpersuasive." *Id.* "If a federal court finds a defendant liable for infringing a valid patent notwithstanding a prior state court determination of invalidity, it is self-evident the state court decision did not 'control' the later federal court case." *Id.*

Nonetheless, KidsEmbrace insists that this court has "frequently" and "consistently" held that contract claims raising issues of infringement or validity must arise under federal law as they can conflict with other suits. Appellee's Br. 32, 39. Yet throughout its briefing, KidsEmbrace almost exclusively cites to our decision in *Jang v. Boston Scientific Corp.*, 767 F.3d 1334 (2014), for support.[6] On its facts, however, *Jang* is distinguishable.

Although we need not decide whether *Jang*'s reasoning would apply to a state-court suit involving *Jang*'s facts, *Jang*'s reasoning is worlds away from the supposed state-federal conflict here. The analysis in *Jang* took place entirely between federal courts. In *Jang*, diversity jurisdiction was undisputed. *Id.* at 1338. Plaintiff's breach of contract case proceeded in district court. On appeal, the issue in *Jang* was whether the regional circuit or the Federal Circuit had appellate jurisdiction. *Id.*

That tension between federal courts of appeal controlled our analysis of *Gunn*'s third element in *Jang*. The

---

[6] Though *Jang* analyzed appellate jurisdiction under § 1295(a)(1), we have applied the *Gunn* test to analyze cases "arising under" both 28 U.S.C. § 1338(a) and 28 U.S.C. § 1295(a)(1). *See Vermont*, 803 F.3d at 646 ("This court has since applied the *Gunn* test to assess "arising under" jurisdiction under § 1295(a)(1)."). Thus, we consider *Jang* here.

specific procedural posture—involving competing *federal* circuits—created an issue with particular "importance" to "the federal system as a whole." *Gunn*, 568 U.S. at 260. Analyzing whether the federal patent law issues were "substantial" enough to confer jurisdiction on the Federal Circuit over the regional circuit, the panel reasoned:

> Permitting regional circuits to adjudicate questions of patent validity, for example, could result in inconsistent judgments between a regional circuit and the Federal Circuit, resulting in serious uncertainty for parties facing similar infringement charges before *district courts within that regional circuit.* Maintaining Federal Circuit jurisdiction over such contractual disputes to avoid such conflicting rulings is important to "the federal system as a whole" and not merely "to the particular parties in the immediate suit."

*Jang*, 767 F.3d at 1338 (quoting *Gunn*, 568 U.S. at 260) (emphasis added). Thus, the reasoning in *Jang* turned on the *system-wide* conflict that could arise in the federal courts if regional circuits reached different conclusions about validity. *Id.* Given the "serious uncertainty" of whether a district court would follow its regional circuit or the federal circuit, such conflicts raised "substantial" concerns for the federal system. *Id.*

The risk of such conflict from state courts here is remote. First, a state court cannot invalidate patents.[7] *See Gunn*, 568 U.S. at 264 (state court decision "will not even affect the validity of [the] patent"). Second, a state court's determination of patent validity does not have precedential effect on a district court. *Id.* at 261–62. Third, as in *Gunn*,

---

[7]    KidsEmbrace notes that it raised certain invalidity and ownership issues as affirmative defenses related to Inspired Development's contract claims. Appellee's Br. 21.

KidsEmbrace "has not identified any case finding . . . preclusive effect based on a state court decision" regarding infringement or validity. *Id.* at 263. Finally, "even assuming that a state court's case-within-a-case adjudication may be preclusive under some circumstances, the result would be limited to the parties and patents that had been before the state court. Such 'fact-bound and situation-specific' effects are not sufficient to establish federal arising under jurisdiction." *Id.* (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006)).

KidsEmbrace also argues that *Gunn* is limited to malpractice claims, which involve only "backward-looking" or "hypothetical" questions of how patent infringement should have been litigated differently by counsel. Appellee's Br. 37–38. In KidsEmbrace's view, a state court's decision on invalidity outside the context of such backward-looking claims will no longer be hypothetical. In turn, KidsEmbrace reads *Gunn* to say that these decisions will conflict with federal law, creating confusion over which precedent to follow.

We disagree. *Gunn* suggests just the opposite. In *Gunn*, the causation element of the malpractice claim required a "case within a case" analysis of an experimental use exception to invalidity. *Gunn*, 568 U.S. at 259. Here, if we accept KidsEmbrace's view that this case raises an embedded patent issue, the unjust enrichment case would involve a "case within a case" analysis of patent infringement. The benefit conferred was that KidsEmbrace was "allow[ed] . . . to use" the patents for past sales of KidsEmbrace car seat products in 2012 and 2013, J.A. 100 ¶ 45, which in KidsEmbrace's view requires an assessment of whether those products would have been covered by the claims. But there is little to suggest that a state court's hypothetical analysis of infringement for the specific products in this quasi-contract claim will affect uniformity in patent law. "Congress ensured such uniformity by vesting exclusive jurisdiction over actual patent cases in the

federal district courts . . . . In resolving the nonhypothetical patent questions those cases present, the federal courts are of course not bound by state court case-within-a-case patent rulings." *Gunn*, 568 U.S. at 261–62; *see also*, 781 F.3d at 1349.

Furthermore, this case does not present a novel question of patent law that could impact other cases. Even if it did, *Gunn* casts doubt on the idea that this would often rise to the level of a "substantial" federal issue. "As for more novel questions of patent law that may arise for the first time in a state court 'case within a case,' they will at some point be decided by a federal court in the context of an actual patent case, with review in the Federal Circuit." *Gunn*, 568 U.S. at 262. "If the question arises frequently, it will soon be resolved within the federal system, laying to rest any contrary state court precedent; if it does not arise frequently, it is unlikely to implicate substantial federal interests." *Id.* Certainly, *Gunn* leaves open the possibility that state court actions with embedded patent issues can raise issues of substantial importance to the federal system. But it suggests that state courts can faithfully apply federal precedent to embedded issues of basic infringement and invalidity in a particular case and that a broader effect on federal patent law is required before a state law claim is taken out of the hands of a state court.

Regardless, KidsEmbrace gets *Gunn* backwards. *Gunn* did not hold that the "substantial" requirement applies only to hypothetical malpractice claims. Rather, *Gunn* held that most malpractice claims will fail to meet that requirement. *See Gunn*, 568 U.S. at 258 ("[W]e are comfortable concluding that state legal malpractice claims based on underlying patent matters will rarely, if ever, arise under federal patent law . . . ."). In doing so, the Supreme Court underscored the importance of the "substantial" issue inquiry as a freestanding part of *Grable*'s analysis in any case. *Gunn* reiterated that the federal issue must be "substantial" if it is to confer federal question jurisdiction.

The "resolution of a patent issue" may be "vitally important" to the particular parties here. *Id.* at 263. "But something more, demonstrating that the question is significant to the federal system as a whole, is needed." *Id.* at 264. As in *Gunn*, that "is missing here." *Id.* Without more, this claim for unjust enrichment does not raise a "substantial" issue.

The other precedent raised by the parties—and discussed in *Jang*—does not unsettle our conclusion. *See, e.g.*, *Forrester Envtl. Servs., Inc. v. Wheelabrator Techs., Inc.*, 715 F.3d 1329 (Fed. Cir. 2013); *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318 (Fed. Cir. 1998), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999).

For example, *Forrester* simply confirms that purely "backward-looking" or "hypothetical" patent issues are *insubstantial*. It does not hold that all future-looking or non-hypothetical issues are *substantial* to the federal system. Thus, *Forrester* is consistent with *Gunn*. *See Forrester*, 715 F.3d at 1335 ("Here, as in *Gunn*, the potential for conflict is purely 'hypothetical.'"). Indeed, far from proclaiming a broad categorical rule for what was sufficient to satisfy "arising under" jurisdiction, *Forrester* held that the allegations at issue failed to raise a substantial issue. *Id.* at 1336 (concluding "patent law issues are not 'substantial in the relevant sense' under *Gunn*" (quoting *Gunn*, 568 U.S. at 260)).

Moreover, to the extent that *Forrester* and *Hunter Douglas* discussed claims that might raise a substantial issue, the allegations involved fundamentally different claims. *Forrester* concerned claims for business disparagement (e.g., suits alleging false or inaccurate statements about patent rights). *Id.* at 1334. In *Forrester*, we noted that "[i]n the past," we have "concluded that similar state law claims premised on allegedly false statements about patents raised a substantial question of federal patent

law." *Id.* "Similarly in *Hunter Douglas* . . ., the plaintiff asserted a claim for 'injurious falsehood' on the theory that the defendant falsely claimed to 'hold exclusive rights to make or sell window shades covered by one or more' patents." *Id.* (quoting *Hunter Douglas*, 153 F.3d at 1329).

We stated that cases involving disparagement claims, such as *Hunter Douglas*, "may well have survived the Supreme Court's decision in *Gunn*." *Id.* But to the extent they do, we explained precisely why these specific claims could create "inconsistent judgments between state and federal courts" of a nature that would generate future "conflict." *Id.* at 1334–35. "For example, a federal court could conclude that certain conduct constituted infringement of a patent while a state court addressing the same infringement question could conclude that the accusation of infringement was false and the patentee could be *enjoined* from making future public claims about the full scope of its patent as construed in federal court." *Id.* at 1334 (emphasis added). Due to the nature of the allegations and the remedies sought, the state and federal courts could both have an impact on patentees' ability to assert the full scope of their rights in the future. Given this tension, we suggested that the federal issue would be "substantial" due to the potential for future conflict. *Id.*

As pled, the claim for unjust enrichment here does not carry with it the same potential to generate future conflict. KidsEmbrace makes no effort to explain how the claim for past damages against a single defendant under a quasi-contract theory could tie up future proceedings in the same way as a state court's injunction or an award of damages for disparagement would impact a patentee's ability to publicly assert the full scope of its patent as discussed in *Forrester* for disparagement claims. The pleadings here simply do not go far enough to generate the type of tension between state and federal proceedings found in *Forrester* or *Hunter Douglas* for future suits.

At bottom, KidsEmbrace ignores the limited nature of the claim. As pled, this claim is about a particular relationship. Mr. Prine and his company had a business arrangement with their manufacturer. Mr. Prine licensed the intellectual property of his company to that manufacturer in exchange for certain royalties. The relationship was formalized in a set of contracts. Mr. Prine's company asserted the contracts to enforce those rights. In case the contracts did not hold up, Mr. Prine's company pled an equitable claim in the alternative to prevent a benefit from flowing to the manufacturer without just compensation. The subject matter of the benefit was the ability to use certain patents. But the unjust enrichment pled here fundamentally depends on the existence of the relationship between the parties.

Therefore, KidsEmbrace's suggestion that Inspired Development—or other litigants—could replicate this claim and sue any other competitor or third-party is unpersuasive. *See* Appellee's Br. 29. Had Inspired Development tried to plead unjust enrichment or some other equitable claim in such a way (i.e., without any existing relationship), this might raise greater concerns for the federal system.[8]

In sum, a state court's decision on Inspired Development's alternative quasi-contract claim based on its business relationship with the defendant here will not control "numerous other cases." Thus, this factor also confirms the issue here is not "substantial" under *Gunn*.

---

[8]   At that point, though labeled as an "unjust enrichment" action, the claim would look like little more than a patent infringement claim against a third-party infringer pled in disguise to avoid federal jurisdiction. But that is not the case before us.

c

Turning to the third *NeuroRepair* factor, here the government has no direct interest in this contract dispute between private parties. Given the "fact-bound" nature of the embedded patent law issues in this suit, the "government interest in having any single case of patent infringement heard in a federal forum is limited." *MDS*, 720 F.3d at 842. Thus, this third factor also militates against treating the issue as substantial.

On balance, all three *NeuroRepair* factors confirm that this case does not rise to the level of presenting a "substantial" federal issue. Though these factors are not exhaustive, KidsEmbrace offers no other meaningful reason why the issue in this case is substantial. Given that *Gunn*'s substantiality factor is not satisfied, Inspired Development's unjust enrichment claim as pled in this case cannot "aris[e] under" federal patent law under 28 U.S.C. § 1338(a).

4

Finally, we assess the fourth requirement of *Gunn*. In doing so, we consider whether exercising federal jurisdiction would upset the "balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. Under these circumstances, it would.

As discussed, KidsEmbrace invites us to essentially ignore *Gunn*'s clear requirements and read *Jang* to say that any breach of contract claim or related equitable claim involving a patent license agreement must "arise under" the patent laws. The consequences of accepting this invitation for the state-federal balance are clear. Any time such a state law claim "necessarily raises" an embedded patent infringement or invalidity question, federal question jurisdiction would lie. Many state law claims involve such embedded questions. "To hold that all questions of patent infringement are substantial questions of federal law for

the purposes of federal patent jurisdiction would sweep a number of state-law claims into federal court." *MDS*, 720 F.3d at 843 (concluding breach of contract claim did not satisfy fourth *Gunn* requirement).

Therefore, finding a federal question here merely because this contract implicates a run-of-the-mill question of infringement or validity would undoubtedly impact the wider balance between state and federal courts. Indeed, a plaintiff could create a federal jurisdictional hook to avoid state court in any case involving almost any state law claim by doing little more than pleading allegations that involve an embedded infringement or validity analysis. Clearly, such gamesmanship in non-diversity actions would upset the balance between state and federal courts. Accordingly, "courts considering alleged violations of a variety of state laws have declined to find federal question jurisdiction notwithstanding the presence of an underlying issue of patent law." *NeuroRepair*, 781 F.3d at 1348 (collecting cases).

For the reasons above, we reverse the district court based on this fourth element of *Gunn* as well.

## II

KidsEmbrace's remaining arguments in favor of jurisdiction are unavailing. First, KidsEmbrace argues that Counts I and II regarding breach of contract might also confer jurisdiction. Second, KidsEmbrace argues its voluntarily dismissed state law counterclaims also create "arising under" jurisdiction.[9]

With regard to Counts I and II, KidsEmbrace tries to fashion these state law claims into a jurisdictional hook. For similar reasons, that effort fails. KidsEmbrace spends pages of its brief arguing how these claims necessarily

---

[9]    KidsEmbrace does not meaningfully argue that Count IV furnishes a basis for jurisdiction.

require resolution of basic patent issues. *See, e.g.*, Appellee's Br. 36–41. But once again, there is no indication these claims rise to the level of substantial federal issues as required by *Gunn*. Indeed, KidsEmbrace rehashes the flawed arguments it already advanced under *Jang* and *Hunter Douglas*, advocating once more that we essentially collapse the third requirement ("substantial") into the first requirement ("necessarily raised") under *Gunn*. This effort is equally unsuccessful. We are not persuaded that Counts I and II meet either the third or fourth requirements in *Gunn*.

With regard to KidsEmbrace's counterclaims, these former allegations do not provide an independent basis for federal question jurisdiction either. As an initial matter, KidsEmbrace concedes it did not raise any actual patent counterclaims (e.g., a declaratory judgment of invalidity or non-infringement). Instead, KidsEmbrace's counterclaims include only state claims based on the contracts between the parties. The counterclaims alleged breach of contract, fraud, negligent misrepresentation, restitution, and breach of fiduciary duty for false *contractual* warranties in the Agreement, which resulted in KidsEmbrace paying "royalties on invalid and otherwise valueless patents." J.A. 141–43. In KidsEmbrace's view, these counterclaims raise substantial questions of embedded inventorship and validity that meet all of *Gunn*'s requirements. We disagree for at least two separate reasons.

First, even if these claims did raise embedded patent issues, they still fail to meet the third and fourth requirements of the *Gunn* test. In particular, nothing in the allegations here shows that these claims will affect future suits in the federal system. Each of KidsEmbrace's counterclaim pleadings are based on the warranties made between the parties when entering the specific contractual relationship set out in the Agreement. *See, e.g.*, J.A. 141–43 ¶¶ 31, 37, 48. Based on the relief pled, KidsEmbrace's counterclaims only expressly seek damages for the royalties it paid under

the Agreement, *see, e.g.*, J.A. 142–43 ¶¶ 35, 41, 46, not an injunction on "future public claims" about the scope of the patent as in *Forrester*. Without more, there is little indication that the patentee would be enjoined from patent rights otherwise impacted in future suits in federal court unrelated to the contracts here. Sweeping these state law contract counterclaims as specifically pled here into federal court would upset the state-federal balance.

Second, KidsEmbrace voluntarily dismissed its counterclaims. "We have repeatedly held that an amendment to the complaint that dismisses the patent law claims *without prejudice*, as here, deprives this court of jurisdiction over the case." *Krauser v. BioHorizons, Inc.*, 753 F.3d 1263, 1268–69 (Fed. Cir. 2014) (emphasis added). Indeed, in *Krauser*, we found that "after Krauser's withdrawal without prejudice of his inventorship claims, the Second Amended Complaint did not contain any claims which depended 'on resolution of a substantial question of federal patent law.'" *Id.* (quoting *Christianson*, 486 U.S. at 809). Here, KidsEmbrace does not dispute that it has dismissed its counterclaims without prejudice. *See also Gronholz v. Sears, Roebuck & Co.*, 836 F.2d 515, 518 (Fed. Cir. 1987) ("[D]ismissal of the patent claim constituted an amendment of his complaint. That amendment left a complaint which consisted of a single, non-patent claim for unfair competition. Applying the well-pleaded complaint rule to the complaint then remaining, we determine that the present suit does not 'arise under' the patent laws for jurisdictional purposes.").

We have considered KidsEmbrace's remaining arguments and find them unpersuasive.

CONCLUSION

Because the district court lacked subject matter jurisdiction, we vacate the district court's judgment and remand for dismissal.

**VACATED AND REMANDED**

COSTS

The parties shall bear their own costs.